Michael Massengale, Justice
Harris County has challenged PRSI Trading's exemption from millions of dollars in ad-valorem tax liability for inventory held at an oil refinery and tank farm. In a decision with significant economic consequences, the panel majority has erroneously deprived PRSI Trading of its valuable tax exemption. The governing law and the facts of the case do not support the panel majority's conclusion that the foreign tax subzone at issue was automatically deauthorized as an unanticipated consequence of a corporate restructuring. Such a conclusion is contrary to the authorization granted by U.S. Customs and Border Protection for PRSI Trading's continued operations in the subzone and the acquiescence of the Port of Houston, which never initiated the procedure available to deactivate the subzone.
*709 The key applicable federal statute, 19 U.S.C. § 81o (e), provides:
Tangible personal property imported from outside the United States and held in a zone for the purpose of storage, sale, exhibition, repackaging, assembly, distribution, sorting, grading, cleaning, mixing, display, manufacturing, or processing, and tangible personal property produced in the United States and held in a zone for exportation, either in its original form or as altered by any of the above processes, shall be exempt from State and local ad valorem taxation.
PRSI Trading's inventory at issue in this appeal was held in Foreign Tax Subzone 84-N, which was created in 1985. The refinery was acquired by a Delaware corporation, Pasadena Refining System, Inc. [PRSI(DE) ] in 2004, and Customs approved that entity as the new operator of Subzone 84-N in 2005. As a result of corporate restructuring, PRSI(DE) was merged into its parent with the result that the refinery was owned by a new Connecticut corporation, also named Pasadena Refining System, Inc. [PRSI(CT) ]. PRSI(CT) subsequently sought approval as the new operator of Subzone 84-N. Customs advised that a letter of concurrence would be required from the Port of Houston, and the Port declined to give its consent. PRSI(CT) then took the legal position that it was not a new operator, and no new "activation" was required for Subzone 84-N. Customs ultimately rejected those arguments, but pending resolution of that dispute, until March 2013, PRSI(CT) was granted permission to operate Subzone 84-N.
Harris County relies on regulations issued by the Foreign Trade Zones Board[1] to support its argument that PRSI Trading is not entitled to its tax exemption. Invoking the Chevron doctrine to suggest that the court must defer to a federal agency's "reasonable interpretation" of the statute, the county argues that the Board "clarified" that "property must be 'admitted' into a zone in order to be entitled to ad valorem tax exemption."[2] The county's argument relies upon the definition of the word "admit" as used in the regulations[3] and a regulation that limits the admission of merchandise into a zone or subzone that has been "activated" in the sense specified by the Board's regulations.[4] By this reasoning, the county's argument depends upon whether and when Subzone 84-N
*710 became activated or deactivated as a result of corporate restructuring, and consequently whether there was an authorized operator of the subzone at the relevant times.
Despite the obscuring effect of the tangle of applicable federal regulations, for purposes of the tax dispute before us the overriding statute addresses this scenario with clarity: inventory "held in a zone" for the purposes permitted by the statute "shall be exempt from State and local ad valorem taxation."[5] Even with the regulatory overlay, Harris County's argument that Subzone 84-N lost its status as a formally approved foreign tax subzone during the disputed time period is utterly unconvincing.
There are federal regulations for the deactivation of a foreign tax subzone,[6] yet it was not until August 2013 that those procedures were invoked to formally deactivate Subzone 84-N. If, as suggested by the panel majority, Subzone 84-N was deactivated upon the operator's 2006 corporate restructuring, why did Customs grant permission for PRSI(CT) to operate the subzone until 2013, why did Customs permit PRSI Trading to maintain its inventory there until 2013, and why did Customs wait until 2013 to require formal deactivation? The panel majority's opinion does not answer these questions.
The more plausible answer, consistent with all parties' actions over the course of the dispute, is that even if PRSI(CT) were required to apply for approval as a new operator, Subzone 84-N was not automatically stripped of its prior status as an approved foreign tax subzone upon the change in the operator's ownership triggered by a corporate restructuring. Moreover, the Port did not object to the proposed change in operator status and did not utilize the procedure to request deactivation of Subzone 84-N. Consequently, the inventory held there was not automatically stripped of its eligibility for an ad-valorem tax exemption.
The panel majority's unorthodox and troubling invocation of collateral-estoppel principles does not compel a contrary conclusion. We should grant en banc reconsideration of this important case, and I respectfully dissent from my colleagues' decision to deny further review.
Chief Justice Radack, not participating.
Justices Keyes, Massengale, and Caughey, voting to grant en banc reconsideration.
Justice Keyes, dissenting from the denial of en banc reconsideration with a separate opinion.
Justice Massengale, dissenting from the denial of en banc reconsideration with a separate opinion, joined by Justice Keyes.
OPINION DISSENTING FROM DENIAL OF EN BANC RECONSIDERATION

19 U.S.C. § 81h ("The Board shall prescribe such rules and regulations not inconsistent with the provisions of this chapter or the rules and regulations of the Secretary of the Treasury made hereunder and as may be necessary to carry out this chapter.").

15 C.F.R. § 400.1(c) ("Foreign merchandise (tangible personal property) admitted to a zone and domestic merchandise held in a zone for exportation are exempt from certain state and local ad valorem taxes. Articles admitted into zones for purposes not specified in the Act shall be subject to the tariff laws and regular entry procedures, including the payment of applicable duties, taxes, and fees.").

19 C.F.R. § 146.1(b) (" 'Admit' means to bring merchandise into a zone with zone status.").

19 C.F.R. § 146.1(b) (" 'Activation' means approval by the grantee and port director for operations and for the admission and handling of merchandise in zone status."). The court's opinion in this case asserts: "In order for the zone to be activated, the operator of the zone must obtain approval of the grantee, in this case, the Port of Houston and the port director." --- S.W.3d ----, ----, 2017 WL 2686328, at *1 (emphasis supplied, citing 19 C.F.R. § 146.6(e) ); but see 19 C.F.R. § 146.6(a) ("A zone operator, or where there is no operator, a grantee , shall make written application to the port director to obtain approval of activation of a zone or zone site." (emphasis supplied) ).

19 U.S.C. § 81o (e).

19 C.F.R. § 146.7(b) ("A grantee, or an operator with the concurrence of a grantee, shall make written application to the port director for deactivation of a zone site .... The port director shall not approve the application unless all merchandise in the site in zone status (other than domestic status) has been removed ....").